Payam Shahian (SBN 228406)
Email: pshahian@slpattorney.com
Jacob Cutler (SBN 264988)
e-mail: jcutler@slpattorney.com
**Strategic Legal Practices, APC**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Hallen D. Rosner (SBN 109740)
Email: hal@rbblawgroup.com
**Rosner, Barry & Babbitt, LLP**
10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150

Attorneys for Plaintiffs MARIA DE LOURDES LUNA
and KAREN CANO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LOURDES LUNA and KAREN CANO,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>FCA US, LLC, a Delaware limited liability company, and DOES 1 through 10, inclusive,<br><br>                    Defendant. | Case No.: 2:17-cv-08272-ODW-RAO<br><br>[Assigned to Hon. Otis D. Wright]<br><br>**PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: September 16, 2019**<br>**Time: 1:30 p.m.**<br>**Location: Courtroom 5D** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................ 4

    A.   FCA Refuses to Buy Back the Lemon it Sold Plaintiffs ....................... 5

    B.   After FCA Initially Denies Any Liability, Plaintiffs' Counsel Diligently Pursues Necessary Discovery and Achieves a Victory for Plaintiffs .... 5

III.  LEGAL ANALYSIS ......................................................................... 8

    A.   As the Prevailing Parties, Plaintiffs are Entitled to Attorney Fees, Costs, and Expenses ......................................................................... 8

    B.   Plaintiffs' "Lodestar" Fees are Reasonable ........................................ 10

        1.   Plaintiffs' Counsel's Hourly Rates are Reasonable ...................... 11

        2.   Plaintiffs' Counsel's Billable Hours are Reasonable ................... 13

    C.   The Requested Fees are Consistent With Fee Awards in Similar Cases ............................................................................................. 15

    D.   A Lodestar Multiplier Enhancement of 1.35 is Warranted .................. 16

        1.   Plaintiffs' Counsel Obtained an Excellent Outcome ................... 16

        2.   The Risks Posed by This Litigation Were Substantial ................ 17

    E.   Plaintiffs are Entitled to Costs and Litigation Expenses ..................... 18

IV.   CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Cazares v. Saenz*, 208 Cal. App. 3d 279 (1989) .................................................. 17

*Drouin v. Fleetwood Enterprises*, 163 Cal. App 3d 486 (1985) ........................... 9

*Estate of Trynin,* 49 Cal.3d 868 (1989) ............................................................... 9

*Etcheson v. FCA US LLC*, 242 Cal. Rptr. 3d 35 (2018) .................................. 3, 7

*Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462 (2016) .............................. 6

*Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006)...10, 15, 16

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2005)............................... 16

*Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509 (2003) ................................. 15

*Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th
    359 (2005)...................................................................................................... 13

*In re Consumer Privacy Cases*, 175 Cal. App.4th 545 (2009) ..........10, 11, 16, 17

*In re Vitamin Cases*, 110 Cal. App. 4th 1041 (2003) ......................................... 16

*Jensen v. BMW of North America*, 35 Cal. App. 4th 112 (1995)........................ 18

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001)................................................. 10, 11

*Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995) ......... 5

*Kwan v. Mercedes-Benz of N. Am., Inc.* 23 Cal. App. 4th 174 (1994).................. 2

*Levy v. Toyota Motor Sales, USA, Inc.*, 4 Cal. App. 4th 807 (1992) .................. 11

*Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982) ........... 11, 12

*Martino v. Denevi*, 182 Cal. App. 3d 553 (1986) ............................................... 13

*Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal.4th 985 (1998)........................... 9

*Niederer v. Ferreira*, 189 Cal. App. 3d 1485 (1987)........................................... 9

*Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 807 (1994)............... 11

*Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101 (2009) ................ 14

*Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ........... 7

*Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal.App.4th 785

ii

(2006)...............................................................................................9, 10, 11, 15

*Serrano v. Unruh, 32 Cal. 3d 621 (1982)*.......................................................... 9, 12

*Sommers v. Erb*, 2 Cal. App. 4th 1644 (1992)....................................................... 13

*Stokus v. Marsh*, 217 Cal. App. 3d 647 (1990)................................................. 7, 14

*Wohlgemuth v. Catepillar, Inc.*, 207 Cal. App. 4th 1252 (2012).......................... 9

## STATUTES

Cal. Civ. Code § 1770 ......................................................................................... 15

Cal. Civ. Code § 1794(d)........................................................................................ 8

## OTHER AUTHORITIES

Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473, 480 (1981)....................................................................................................... 17

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

## I.    INTRODUCTION

This is a motion for statutorily authorized attorney fees, costs, and expenses following a resounding victory for Plaintiffs Maria De Lourdes Luna and Karen Cano in this "Lemon Law" lawsuit under the Song-Beverly Consumer Warranty Act ("SBA"). This victory consists of a settlement agreement in which FCA has agreed to pay Plaintiff damages of $166,000.00, or nearly 2.9 times the subject vehicle's repurchase price. This amount includes the full restitution of Plaintiffs' actual damages under the SBA in the approximate amount of $58,000.00, as well as additional civil penalties in the approximate amount of $108,000.00. Additionally, FCA has agreed to pay Plaintiffs' fees, costs, and expenses in accordance with section 1794(d) pursuant to noticed motion and deem Plaintiffs the prevailing parties for the purposes of this Motion.

Notably, this case would not have been necessary in the first instance had FCA agreed to provide Plaintiffs with the repurchase they requested ***before filing their Complaint***. FCA knew that Plaintiffs' 2016 Jeep Wrangler vehicle ("Vehicle") suffered from debilitating engine defects. This awareness derived from multiple sources, including FCA's internal investigations into the defects, as well as FCA's specific knowledge of Plaintiffs' repair history, in which Plaintiffs were repeatedly forced to take the Vehicle to the dealership for repairs. Frustrated by FCA's inability to conform the vehicle to warranty, Plaintiffs directly called FCA to report ongoing problems with the Vehicle and to expressly request a buyback under the Lemon Law. FCA, however, refused to repurchase the Vehicle, as it was affirmatively obligated to do.

This failure is unsurprising, however, in light of FCA's general strategy for litigating Lemon Law cases. Under this strategy, which FCA implements regardless of the facts of the case, FCA (1) automatically refuses to repurchase the lemon prior to litigation, forcing plaintiffs to retain an attorney and file a lawsuit to enforce their rights. FCA then waits until substantial litigation has already occurred—sometimes

1

years into the litigation—to (2) extend a Rule 68 offer to repurchase the Vehicle (thereby impliedly admitting that its refusal to repurchase the Vehicle *prior* to the filing of the Complaint was "willful" within the meaning of the SBA). The offer, however, is wholly inadequate, as well as invalid and incapable of acceptance. Throughout the litigation, FCA (3) continues to deny all liability (including civil penalty liability) and refuses to pay plaintiffs the full measure of their damages, forcing them to prepare for trial. Only on the eve of trial does FCA (5) agree to pay plaintiffs the damages they are owed. By prolonging the litigation in this way, FCA is able to (6) drive up the amount of work plaintiff's counsel must perform so that FCA (7) can argue, in response to plaintiff's fee motion, that plaintiff litigated unnecessarily (without mentioning the fact that plaintiffs' recovery eclipses its Rule 68 offer). In essence, FCA's strategy is to (7) penalize plaintiffs and their counsel for attempting to enforce plaintiffs' rights under the SBA. Notwithstanding the Pyrrhic nature of this strategy, FCA considers it a "win" if the court reduces plaintiffs' counsel's fees, even if FCA must, in the process, pay its own attorney's hourly fees, as well as substantial civil penalties.[1]

FCA hewed closely to this strategy here. In light of the Vehicle's manifest problems, FCA knew, or should have known, that the Vehicle qualified for repurchase. Nevertheless, FCA refused to repurchase the Vehicle prior to litigation, forcing Plaintiffs to retain an attorney and file a lawsuit. More than one year into the litigation, FCA extended its first and only Rule 68 offer for $90,000.00 in damages. The offer, however, was wholly inadequate—indeed, Plaintiffs ultimately recovered 1.84 times this amount. Then throughout the litigation, FCA denied all liability, forcing Plaintiffs to prepare for trial.[2] Plaintiffs' efforts included propounding

---

[1] *See Kwan v. Mercedes-Benz of N. Am., Inc.* 23 Cal. App. 4th 174, 184 (1994) (civil penalty serves "as a deterrent to deliberate violations. Without such a provision, a manufacturer who knew the consumer was entitled to a refund or replacement might nevertheless be tempted to refuse compliance in the hope the consumer would not persist, secure in the knowledge its liability was limited to a refund or replacement.").

[2] While FCA denied liability in its answer, it failed to timely responses to

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

written discovery, noticing the deposition of FCA's PMQ, responding to FCA's written discovery, defending FCA's deposition of both Plaintiffs, attending FCA's inspection of the Vehicle, filing two motions *in limine*, opposing three of FCA's motions *in limine*, filing various trial documents (including a Memorandum of Contention of Facts and Law, a Statement of the Case, Proposed Voir Dire Questions, a Proposed Joint Exhibit List, a Witness List, a Proposed Special Jury Verdict, a Joint Status Report, a Joint Exhibit List, a Witness List, and a Statement of the Case), and participating in a private mediation on March 26, 2019. Only on the eve of trial did FCA agree to pay damages of $166,000.00 and fees, costs, and expenses by motion.

Having forced Plaintiffs to litigate in this manner, FCA cannot claim that Plaintiffs' efforts were "unnecessary" or their fees "unreasonable." Even so, Plaintiffs expect that FCA will argue (as it always does) that Plaintiffs litigated this case unreasonably after the Rule 68 offer and that their post-offer fees should be reduced. The California Court of Appeal, however, has expressly rejected this argument, holding that absent a court finding that defendant's conduct was not willful, plaintiffs (1) reasonably reject an inadequate and/or invalid settlement offer, (2) are entitled to litigate to obtain additional damages, and (3) should be paid for their reasonable post-offer fees under section 1794(d)). *See Etcheson v. FCA US LLC*, 242 Cal. Rptr. 3d 35, 47 (2018).

Additionally, FCA will likely argue that the *only* reason it eventually offered to pay Plaintiffs nearly 2.9 times the repurchase price of the Vehicle was because the cost of continuing to litigate was simply too great. FCA's concern about litigation costs, however, is belied by FCA's decision to litigate this case for nearly two years before offering to pay this amount. In truth, FCA ultimately agreed to pay full

Plaintiff's discovery requests, including Plaintiff's Requests for Admissions, Set One, which resulted in substantial briefing in which the Court ultimately granted Plaintiff's Motion in Limine No. 1 deeming FCA's Responses to Plaintiff's Request for Admissions as being deemed admitted.  [Dock. Nos. 55, 70, & 75}.

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

restitution and substantial civil penalties because the evidence Plaintiff had gathered throughout the litigation, including the Court's Order deeming FCA's Responses to Plaintiff's Request for Admissions as being deemed admitted. Hence, rather than (1) proceed to trial, lose, and then pay Plaintiffs' sought-after damages, FCA elected to (2) pay damages prior to a jury verdict—but not until substantial litigation had occurred.

Notably, other courts routinely award Plaintiffs' counsel its requested fees under similar circumstances (*i.e.*, Lemon Law cases against automobile manufacturers, including FCA). For instance, recently, in *Zomorodian* and *Holeman*, the Central District recently approved SLP's hourly rates. Further, in the past year or so alone, the courts in *Fuller v. FCA*, *Holeman v. FCA*, *Al-Jiboury v. FCA*, and *Geredes v. FCA*, awarded SLP 100% of its requested lodestar (and in *Fuller*, the court awarded Plaintiff a 1.5 multiplier). These rulings underscore the reasonableness of Plaintiffs' counsel's lodestar here.

Accordingly, the only issue here is whether the requested fee award of $120,594.18—consisting of (1) $71,084.00 in attorney fees and $4,916.29 in recoverable costs and expenses for Strategic Legal Practices, APC ("SLP"); (2) $11,550.00 in attorney fees and $621.99 in costs and expenses for Rosner, Barry & Babbitt, LLP ("Rosner Firm"); (3) a lodestar multiplier of 1.35 on the fees, for a total of $28,921.90; and (4) an additional $3,500 in fees as reasonably anticipated to prepare this fee motion, review FCA's opposition to the instant motion, draft the reply brief, and attend oral argument on this matter—are "reasonable" under the circumstances.

## II.   STATEMENT OF FACTS

Because Plaintiffs won the victory described above, and because FCA has agreed that Plaintiffs are the prevailing parties for the purposes of recovering attorney fees, costs, and expenses, the relevant facts are largely limited to those that show "why" and "how" Plaintiffs were forced to pursue a lawsuit to persuade FCA

to pay restitution and civil penalties on a vehicle it conceded was a "lemon."

### A. FCA Refuses to Buy Back the Lemon it Sold Plaintiffs

On or about May 31, 2016, Plaintiffs purchased the 2016 Jeep Wrangler at issue ("Vehicle") for a total sales price of $66,220.56. (Cutler Decl. ¶ 3, Ex. 1.) After taking into consideration unaccrued interest and the mileage offset, the actual damages were approximately $58,000.00. (*Id.*) As a result of engine defects, however, Plaintiffs were forced to take the Vehicle to the dealership multiple times for repairs. (*Id.* ¶¶ 5-6.) *Because of these ongoing defects, which FCA could not repair, Plaintiffs called FCA (although they were under no obligation to do so) to report problems with the Vehicle and to explicitly ask for a buyback under the Lemon Law. (Id. ¶ 7.)*[3] Plaintiffs specifically informed FCA that the engine had been replaced, and that they had been to the service facility three or four times in order to have the leaking roof repaired, to no avail. FCA, however, refused to repurchase the Vehicle, as it was affirmatively obligated to do. (*Id.*)

### B. After FCA Initially Denies Any Liability, Plaintiffs' Counsel Diligently Pursues Necessary Discovery and Achieves a Victory for Plaintiffs

Plaintiffs filed this lawsuit on October 27, 2017 alleging violations of the SBA. (Cutler Decl. ¶ 8.) On November 13, 2017, FCA removed this case to federal court and filed its Answer, which denied all liability and asserted multiple affirmative defenses, including those blaming *Plaintiffs* for the Vehicle's defects. (*Id.* ¶¶ 9, 10, Ex. 3.)

FCA's denial of liability (including civil penalty liability) forced Plaintiffs to

---

[3] *See Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995) ("[T]he Song-Beverly Act 'creates an affirmative duty upon **the manufacturer** ... to provide restitution or replacement when a covered defect ... is not repaired after a reasonable number of attempts.'") (emphasis added); *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103-04 (2001) ("We believe, as did the court in *Krotin* ..., that the only affirmative step the Act imposes on consumers is to 'permit[ ] the manufacturer a reasonable opportunity to repair the vehicle.' [Citation omitted.] Whether or not the manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible.").

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

proceed with their lawsuit.[4] During this litigation—Plaintiffs incurred attorney fees, costs, and expenses for various tasks, including, notably:

- Preparing and serving the Complaint. (Cutler Decl. ¶ 8.)
- Preparing and filing their portion of the Joint Rule 26(f) Discovery Plan. (*Id.* ¶ 11.)
- Preparing and serving written discovery, including Special Interrogatories, Requests for Admission, and Requests for Production, which were designed to expose the extent of FCA's awareness of the engine defects and FCA's inability to repair them. (*See id.* ¶ 12.)
- Preparing and serving a notice of deposition of FCA's PMQ. (*Id.* ¶ 13.)
- Responding to FCA's written discovery. (*Id.* ¶ 14.)
- Defending FCA's deposition of Plaintiff Maria De Lourdes Luna. (*Id.* ¶ 15.)
- Defending FCA's deposition of Plaintiff Karen Cano. (*Id.* ¶ 16.)
- Attending FCA's inspection of the Vehicle. (*Id.* ¶ 17.)
- Preparing and filing various trial documents, including a Memorandum of Contention of Facts and Law, a Statement of the Case, Proposed Voir Dire Questions, a Proposed Joint Exhibit List, a Witness List, and a Proposed Special Jury Verdict. (*Id.* ¶ 18.)
- Preparing and filing additional trial documents, including a Joint Status Report, Joint Exhibit List, Witness List, and Statement of the Case. (*Id.* ¶ 19.)
- Attending a Status Conference on March 4, 2019. (*Id.* ¶ 20.)
- Preparing and filing two motions *in limine*. (*Id.* ¶ 21.)
- Opposing three of FCA's motions *in limine*. (*Id.* ¶ 21.)
- Attending the pretrial conference/motions *in limine* hearing. (*Id.* ¶ 22.)
- Evaluating FCA's Rule 68 Offer for $90,000.00 plus a motion for fees, costs, and expenses. (*Id.* ¶ 23, Ex. 4.)
- Preparing and serving an objection to FCA's Rule 68 Offer. (*Id.* ¶ 23.)
- Participating in a private mediation at which the case resolved for $166,000.00 in damages plus a motion for attorney fees, costs, and expenses. (*Id.* ¶ 24, Ex. 5.) Additionally, FCA agreed that Plaintiffs are the prevailing parties for the purposes of this Motion. (*Id.*)
- Meeting and conferring with FCA under Local Rule 7-3 prior to filing the instant Motion. (*Id.* ¶ 25.)

---

[4] *See Goglin v. BMW of North America, LLC*, 4 Cal. App. 5th 462, 473 (2016) (in upholding an award of attorney's fees in a Song Beverly matter wherein defendant made settlement offers—both prelitigation and early in the litigation—for restitution, holding that time spent on litigation was reasonable, as the "settlement offers themselves contained no admission of liability…Thus, until the case actually settled, plaintiff had to conduct discovery and prepare to prove liability on her varied claimed with their varied elements. She also had to be prepared to counter the numerous affirmative defenses raised in the answers to her complaint.").

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

Plaintiffs' efforts, including discovery practice, were necessary to establish FCA's liability; to protect against surprise at trial; and to rebut the affirmative defenses raised in FCA's Answer—*i.e.*, they were instrumental in persuading FCA to pay Plaintiffs the damages owed to him. Further, FCA's brinksmanship nearly forced this matter to trial, and as such, Plaintiffs associated in as trial counsel the Mr. Hallen Rosner of Rosner Barry & Babbitt LLP. The Rosner Firm geared up for trial, including preparing for and arguing motions in limine at the pretrial conference.[5]

In its opposition, FCA will invariably argue, without providing the Court with a copy of its own counsel's time records, that Plaintiffs unreasonably rejected its Rule 68 Offer (for $90,000.00) and should be precluded from recovering post-offer fees. As noted above, however, the California Court of Appeal has held that absent a court finding that defendant's violations of the SBA were not willful, plaintiffs (1) reasonably reject an inadequate and/or invalid offer, (2) are entitled to continue litigating to recover additional damages under the SBA, and (3) are entitled to recover attorney fees incurred in obtaining those additional damages (including, specifically, fees incurred after the invalid or inadequate offer). *See Etcheson*, 242 Cal. Rptr. 3d at 47.[6] Here, Plaintiffs' ultimate recovery of $166,000.00 in damages eclipses FCA's Rule 68 Offer of $99,000.00 (by a factor of 1.84). Further, as noted above, FCA's offer was invalid and incapable of acceptance. Accordingly, under *Etcheson*, Plaintiffs reasonably rejected FCA's inadequate and invalid offer, were entitled to continue litigating to obtain damages beyond the $90,000.00 offer (which Plaintiffs, in fact, ultimately recovered), and are entitled to recover fees incurred after the offer.

---

[5] (*See* Rosner Declaration Ex A)
[6] *See also Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 654 (1990) ("Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries.").

7

## III.   LEGAL ANALYSIS

### A.   As the Prevailing Parties, Plaintiffs are Entitled to Attorney Fees, Costs, and Expenses

In diversity actions, as here, "federal courts look to state law in determining whether a party has a right to attorney's fees and how to calculate those fees." *Gezalyan v. BMW of North America, LLC*, 697 F. Supp. 2d 1168, 1169-70 (C.D. Cal. Mar. 25, 2010) (citing *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.1995)). (*See also* Cutler Decl Ex. 7 [in *Zomorodian*, California district court applying state law in assessing plaintiff's right to attorney fees in SBA case] and Shahian Decl Ex. 10 [same in *Forouzan* action].)

"Under California law, if a buyer prevails in an action under the [SBA] she may recover 'the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.'" *Gezalyan*, 697 F. Supp. 3d at 1170 (quoting Cal. Civ. Code § 1794(d)).

Here, FCA has agreed under the Settlement Agreement that Plaintiffs are the prevailing parties for the purposes of recovering fees, costs, and expenses. Accordingly, an award of attorney fees and costs is <u>mandatory</u>:

> If the buyer prevails in an action under this section, the buyer *shall* be allowed by the court to recover as part of the judgment a sum *equal to the aggregate amount of costs and expenses, including attorney's fees* based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Civ. Code §1794(d) (emphasis added). This mandatory fee-and-cost recovery

provision reflects the California Legislature's intent to provide "injured consumers strong encouragement to seek legal redress" for Lemon Law clams. *Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal. 4th 985, 994 (1998); *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 817 (2006); *Wohlgemuth v. Catepillar, Inc.*, 207 Cal. App. 4th 1252, 1262 (2012) (noting "the provision for recovery of costs and attorney fees in [Civil Code] section 1794(d) is an important aspect of this consumer protection, and without it many would not be financially able to pursue a remedy").[7]

Moreover, California courts have consistently "rejected the notion the fee award must be proportionate to the amount of damages recovered." *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1508 (1987).

Defendant also argues that the amount of attorneys' fees awarded by the court is excessive when compared to Plaintiff's recovery... It should be noted that *an attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery*. This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible... The trial court did not err in calculating attorneys fees based on actual time expended.

*Drouin v. Fleetwood Enterprises*, 163 Cal. App 3d 486, 493 (1985) (emphasis added). Because Plaintiffs are suing under "under consumer protection statues involving mandatory fee-shifting provision, the legislative policies are in favor of []

---

[7] Such mandatory recoverable fees and costs include those "necessary to establish and defend th[is] fee claim . . . ." *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982); *Robertson*, 144 Cal. App. 4th at 817 (fees for fee-and-cost motion) (remanded on other grounds); *Estate of Trynin,* 49 Cal.3d 868, 874 (1989) ("Where the right to counsel fees is based on statute, recovery for fee-related services has been consistently allowed."). Accordingly, Plaintiffs are entitled to recover her fees in connection with the preparation of this Motion.

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of [] actual recovery." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 164 (2006).

### B.   Plaintiffs' "Lodestar" Fees are Reasonable

Under California law, the lodestar/multiplier is the primary method for determining what fees are "reasonable" under the statutory attorney fees provision of the Song-Beverly Act. *Robertson,* 144 Cal. App. 4th 818-19. *See also Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001) (California Supreme Court endorsing the lodestar method as the prevailing method for statutory fee awards); *Graciano*, 144 Cal. App. 4th at 154. California's lodestar/multiplier method uses a two-step process for calculating fees:

Step One: The trial court determines a lodestar value for the fees by multiplying the time reasonably spent by Plaintiffs' counsel on the case by a reasonable hourly rate. *See In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556-57 (2009).

Step Two: The trial court may then adjust or enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors, such as the degree of skill required and the results achieved. *Id.*; *see also Ketchum*, 24 Cal. 4th at 1130, 1137 (appellate court erred in concluding it lacked authority to enhance prevailing party's lodestar).

Likewise, the Ninth Circuit utilizes the lodestar method for calculating reasonable attorneys' fees, "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Welch v. Metro Life Ins. Co.*, 480 F. 3d 942, 945 (9th Cir. 2007)

The lodestar approach "anchors the trial court's analysis ***to an objective determination*** of the attorney's services, ***ensuring the amount awarded is not arbitrary***." *Graciano*, 144 Cal. App. 4th at 154 (emphasis added).

As noted above, in *Zomorodian* and *Holeman,* the Central District recently

10

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

approved Plaintiffs' hourly rates. Further, in the past year or so alone, in *Fuller*, *Holeman*, *Hall*, *Al-Jiboury*, and *Geredes*, courts awarded SLP 100% of the requested lodestar (and in *Fuller*, the court also awarded SLP a 1.5 multiplier). These cases underscore the reasonableness of Plaintiffs' counsel's lodestar here.[8]

### 1.   Plaintiffs' Counsel's Hourly Rates are Reasonable

The hours billed by Plaintiffs' counsel are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556. In determining an appropriate hourly rate, the trial court should look to apply rates commensurate with the "hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133. Evidence of the basic hourly rates sought by and awarded to the same law firm in other litigations, as well as experience of counsel, are "obviously relevant" to the attorney fees determination. *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005-06 (1982).[9]

---

[8] Plaintiffs expect that FCA will, in its anticipated Opposition, attempt to mislead the Court by citing *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 807 (1994), and *Levy v. Toyota Motor Sales, USA, Inc.*, 4 Cal. App. 4th 807 (1992), in support of its argument that the lodestar/multiplier approach does not apply and that the Court should reduce Plaintiffs' requested fees. This profoundly misrepresents the law applicable to contingent fee cases such as this one. **Neither *Nightingale* nor *Levy* involved a contingent fee agreement, as here.** (*See* Shahian Decl. ¶ 47 [SLP took this case on a contingency basis].) Rather, both involved hourly rate agreements. Indeed, in *Nightingale*, the court itself noted that its holding did not apply to contingent fee agreements. *Nightingale*, at 105 n.6. Further, *Nightingale* is inapplicable because it was decided before the California Supreme Court issued its decision in *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-1132 (2001). In *Ketchum*, the California Supreme Court held that unless a fee-shifting statute indicates otherwise, courts should presume the Legislature intended use of the lodestar method to calculate fees. *Ketchum, supra*, 24 Cal.4th at 1135-1136. Accordingly, neither *Nightingale* nor *Levy* place any limits on the fees sought in the context of a contingent fee agreement.

The difference between contingent fee agreements and hourly rate agreements was made clear in *Robertson*, which ruled that *Nightingale* and *Levy* do not apply to contingent fee agreements. *Robertson*, 144 Cal. App. 4th at 818. Instead, the court held that the correct method for calculating a fee award in a contingent fee case is the lodestar/multiplier approach. *See id.* Accordingly, the Court should disregard any argument by FCA that *Nightingale* and *Levy* articulate the applicable standard here.

[9] Plaintiffs' counsel, in presenting evidence of their basic hourly rates, need not "explain the basis on which those hourly rates were awarded to counsel in other cases, the nature of other litigation, its difficulty and other factors which might have

---

11

In the absence of evidence to the contrary, a moving party's showing of rates that have been upheld "compels a finding that the requested hourly rates were within the reasonable rates for purposes of setting the base lodestar amount." *Graciano*, 144 Cal. App. 4th at 156. *See also Carson v. Billings Police Dep't*, 470 F. 3d 889, 892 (9th Cir. 2006) (although prevailing market rate for attorneys of comparable experience, skill, and reputation controls hourly rate determination, fact that "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market.").

The hourly rates for the attorneys who worked on this case are: (1) Gregory Yu ($525/hr); (2) Jacob Cutler ($435/hr); (3) Christine Haw (2018 hourly rate of $375 and 2019 rate of $410/hr); (4) Gregory Sogoyan ($350/hr); (5) Marcy Sanchez ($475/hr); (6) Nancy Zhang ($365/hr); (7) Caitlin Scott (2018 $335/hr and 2019 $365/hr); (8) Yoel Hanohav ($350/hr); (9) Diana Rivero ($375/hr); (10) Anthony Ross ($435/hr); (12) Karen Wallace ($425/hr); and (14) Hallen Rosner ($660/hr). These rates are appropriate given the relative experience and qualifications of these attorneys. (*See* Shahian Decl. ¶¶ 20-42.) They are similar to the rates Los Angeles County courts have awarded some of these attorneys in vehicle defect cases. (*See Shepard v. BMW* (Los Angeles Superior Court Case No. BC622506) (approving Mr. Yu's 2019 rate of $525/hr, Mr. Cutler's 2017 hourly rate of $395/hr and 2019 hourly rate of $435 [Ms. Wallace has similar experience to Mr. Cutler], Ms. Haw's 2018 hourly rate of $375 and 2019 rate of $410/hr, Mr. Sogoyan's rate of $350/hr [Mr. Hanohav and Ms. Scott have similar experience to Mr. Sogoyan], Ms. Santos rate of $595/hr [Mr. Rosner has even more experience than Ms. Santos], Mr. Resnick's rate of $455/hr [Ms. Sanchez and Mr. Ross have similar experience to Mr. Resnick], Ms. Balancio's rate of $385/hr [Ms. Rivero and Ms Zhang have

---

affected the award." The basic rates merely are the starting point of a fee award calculation. *Margolin*, 134 Cal. App. 3d at 1005. Consideration of the other factors listed only occurs *after* the court fixes the hourly rate and the number of hours spent, as part of the analysis to determine whether the total fees should be modified. *Id.* (citing *Serrano*, 20 Cal. 3d at 49).

12

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

similar experience to Ms. Balancio],; *See Galindo v. General Motors* (LASC Case No BC693061) (court approved Mr. Yu's rate of $525/hr, Mr. Cutler's 2018 rate of $410/hr and 2019 rate of $435/hr, Mr. Oakley's rate of $595/hr [Mr. Rosner has even more experience than Mr. Oakley], Mr. Tarter's rate of $435/hr [Ms. Sanchez[10] has similar experience to Mr. Tarter]; and Mr. Nguyen's rate of $385/hr who has similar experience to Ms. Zhang, Ms. Rivero and Ms. Scott]; *McCullough v. FCA US, LLC* (2019) San Diego Superior Court Case No. 37-2015-00013501-CU-BC-CTL [Judge John S. Meyer awarded 100% of fees requested at Mr. Rosner's rate of $660 per hour; *Ardestani v. BMW of North America, LLC* (2019) Central District of California Case No. 8:17-CV-00721-JDE [Magistrate Judge John D. Early found Mr. Rosner's hourly rate of $660 per hour and all billable hours to be reasonable and awarded a 1.5 multiplier following a jury trial.

### 2.   Plaintiffs' Counsel's Billable Hours are Reasonable

Plaintiffs' fee recovery is based on the about 187.5 hours spent by his attorneys, SLP and the Rosner Firm. As Plaintiffs' submitted billing records make clear, the time spent is reasonable. (Shahian Decl. ¶ 43, Ex. 13; Rosner Decl. Ex A) These billing records reflect the actual time and descriptions of services billed in connection with the litigation of this action by Plaintiffs' counsel and have been audited to remove any entry that may be duplicative, redundant, unnecessary or otherwise. (*Id.*) Although the submission of such detailed time records is not necessary under California law,[11] if submitted, such records "are entitled to credence in the absence of a clear indication the records are erroneous." *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005). *See also Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 & 441 (1983) (attorneys seeking fee awards are "not required to record in great detail how each minute of [their] time

---

[10] Also See *Raul Ramos v. FCA* (Los Angeles Superior Court Case No. BC662094) (approving Ms. Sanchez's rate of $475/hr)
[11] *See Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986); *Sommers v. Erb*, 2 Cal. App. 4th 1644, 1651 (1992).

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

was expended." Rather, they need only "keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.").

As detailed in the accompanying declarations, Plaintiffs' counsel's efforts in this litigation were prompted by FCA's denial of liability and refusal to pay Plaintiff's rightful damages until nearly two years into the litigation, when, on the eve of trial, it agreed to pay damages of $166,000.00 and fees, costs, and expenses under section 1794(d) by motion. (*See generally* Cutler Decl.) FCA's litigation tactics forced Plaintiffs to incur attorney fees in, among other tasks, propounding written discovery, noticing the deposition of FCA's PMQ, responding to FCA's written discovery, defending FCA's deposition of both Plaintiffs, attending FCA's inspection of the Vehicle, filing two motions *in limine*, opposing three of FCA's motions *in limine*, filing various trial documents (including a Memorandum of Contention of Facts and Law, a Statement of the Case, Proposed Voir Dire Questions, a Proposed Joint Exhibit List, a Witness List, a Proposed Special Jury Verdict, a Joint Status Report, a Joint Exhibit List, a Witness List, and a Statement of the Case), and participating in a private mediation.

Plaintiffs' efforts demonstrated to FCA that Plaintiffs were prepared to litigate this action to a verdict, that they would not be deterred by FCA's litigation tactics, and that they would not abandon their right to the damages due. Ultimately, FCA agreed to offer $166,000.00—approximately 2.9 times the repurchase price of the Vehicle—in a litigation where liability was fiercely contested. *See Stokus v. Marsh*, 217 Cal. App. 3d 647, 654 (1990) ("Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries."); *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ("A defendant cannot litigate tenaciously and then be heard to complain

14

about the time necessarily spent by the plaintiff in response.").[12] Absent Plaintiffs' counsel's diligent efforts, such a favorable outcome likely would not have been achieved.

## C.     The Requested Fees are Consistent With Fee Awards in Similar Cases

The fees sought here are consistent with other statutory fee recovery cases (*e.g.*, under the Lemon Law, and are reasonable given the work required to resolve this case. *See, e.g.*, *Robertson*, 144 Cal. App. 4th at 817 (affirming award of $158,647.20 in attorney fees and $22,028 in costs in "standard" Lemon Law case); (*see also* Shahian Decl. ¶ 10, Ex. 3 [Sept. 27, 2017 Order awarding $327,782.75 in fees where plaintiff obtained judgment of $109,357.05 in *Fuller v. FCA US, LLC* (Los Angeles Super. Ct., Case No. BC556964)]; *see also id.* ¶ 8, Ex. 1 [granting Plaintiff's motion for fees and costs in Lemon Law case of *Khani v. Ford Motor Co.* (L.A. Super. Court Case No. BC466626), awarding $409,209.26 in attorney fees and costs, where Ford had agreed to buy back vehicle for $65,000]; and ¶ 11, Ex. 4 [February 27, 2018 Notice of Ruling in *Kazaryan v. Mercedes-Benz USA, LLC* (L.A. Super. Ct., Case No. BC574416), granting motion for attorney fees and awarding SLP 100% of lodestar of $186,456.00, where the client's recovery was $65,000] [Minute Order granting 100% of the base lodestar in the amount of $248,410.50 in the matter of *Abedi-Masihi v. Mercedes-Benz USA, LLC* (Los Angeles Super. Ct., Case No. BC551688), where the client's recovery was $10,870.41); Id. Ex. 12

---

[12] *See also Graciano*, 144 Cal. App. 4th at 164 (mandatory fee-shifting provisions in consumer protection statutes (*e.g.*, the Lemon Law) reflect legislative policies favoring recovery of "all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recovery."); *Robertson*, 144 Cal. App. 4th at 820 (Lemon Law fee recovery provision (Civ. Code § 1794(d)) drafted "to make sure attorney's fees awards would be based on actual time expended, rather than a percentage of the recovery, so that pursuit of consumer warranty cases would be economically feasible"); *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) ("[P]rovision for recovery of attorney's fees allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest. To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying.") (*citing* Consumer Legal Remedies Act, Civ. Code § 1770).

15

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

[granting Plaintiff's motion for fees, costs, and expenses in *Shepard v. BMW*, and awarding SLP $144,720.50.).

### D.    A Lodestar Multiplier Enhancement of 1.35 is Warranted

Whereas the United States Supreme Court has held that contingency-fee multipliers are unavailable under federal fee-shifting statutes, California law, which controls here, permits such enhancements under state fee-shifting statutes. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *id*. ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."). *See also id*. ("We apply existing California precedent and affirm the use of a multiplier.").

In California, the lodestar amount, once determined, may be increased by a "multiplier enhancement" that is based on several factors, including: (1) the risks presented by the litigation; (2) the novelty and difficulty of the legal and factual issues involved; (3) the results obtained on behalf of the plaintiff; and (4) the skill exhibited by counsel. *See, e.g.*, *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009); *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003); *Graciano*, 144 Cal. App. 4th at 154. Based on the analysis of these factors set forth below, a multiplier of 1.35 (or $28,921.90) should be applied here.[13]

### 1.    Plaintiffs' Counsel Obtained an Excellent Outcome

"The 'results obtained' factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 582 (2005). Here, Plaintiffs' counsel achieved an excellent outcome: full statutory repurchase of the Vehicle ***and civil penalties in the amount of $108,000.00***. This is, by any measure, an outstanding result. The recovery is particularly impressive when compared against FCA's

---

[13] "[T]he fact that counsel seeks a multiplier as a component of its fee request … is not itself a proper factor in determining the reasonableness of sought-after fees. In fact, it is not unusual for counsel to ask for a multiplier in contingent fee cases as this one." *Etcheson*, at *12.

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

starting position: Prior to litigation, FCA refused to repurchase the Vehicle at all. Only when trial loomed, nearly two years into the litigation, did FCA finally agree to pay $166,000.00 and Plaintiffs' fees, costs, and expenses pursuant to motion. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 (holding that courts may increase lodestar by taking into account quality of representation and results obtained).

### 2.   The Risks Posed by This Litigation Were Substantial

One factor considered in awarding a multiplier is the risk of non-recovery or delayed recovery that counsel shouldered in taking on the case. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) ("The lodestar adjustment approach … allows a court awarding attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment …."). "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1333 (quoting Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)). *See also Cazares v. Saenz*, 208 Cal. App. 3d 279, 287-88 (1989) (noting that contingency-based fee "may properly provide for a larger compensation than would otherwise be reasonable" given the "economic considerations separate and apart from the attorney's work on the case."); *Ardestani v. BMW of N. Am. LLC*, No. 8:17-CV-00721-JDE, 2019 WL 2098351, at **5-6 (C.D. Cal. May 13, 2019) (in a SBA case involving facts analogous to those here, including the recovery of the maximum two-times civil penalties, granting plaintiff's fee motion in its entirety and finding that the requested rates, hours, and a lodestar multiplier of 1.5 were reasonable, in part on the grounds that "the risk of nonpayment in this contingency case was substantial.").

Here, Plaintiffs' counsel represented Plaintiff on contingency—if Plaintiffs

17

did not recover, neither would their counsel. (Shahian Decl. ¶ 47.) Moreover, by the time of the hearing on this Motion, SLP will have been litigating this case without compensation for over two years. Thus, a multiplier is appropriate.

### E.     Plaintiffs are Entitled to Costs and Litigation Expenses[14]

Rule 54 of the Federal Rules of Civil Procedure and Local Rule 54, federal procedural laws, are inapplicable to Plaintiffs' request for costs and expenses. Rather, SBA's cost and expense provision, section 1794(d), which is a state substantive law, governs Plaintiffs' request. *Forouzan v. BMW of N. Am., LLC, et al.,* No. CV173875DMGGJSX, 2019 WL 3422607, at \*2 (C.D. Cal. July 26, 2019) (citing *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049 (9th Cir. 2003)).

Section 1794(d) allows for the recovery of **expenses** beyond the costs enumerated in the Local Rules.[15] *See Forouzan*, *supra*, 2019 WL 3422607, at \*4 (finding that the Clerk of the Court improperly concluded that the Local Rules prohibited recovery for court reporter's transcripts, expert and expedited transcripts, expert fees, mediation fees, and fees for filing and serving pleadings from plaintiff's cost and expense recovery, as these were recoverable under section 1794(d)) (citing *Jensen v. BMW of North America*, 35 Cal. App. 4th 112, 137-38 (1995) [examining Legislative history of SBA and holding that "costs and expenses" language to be interpreted broadly to include such things as filing fees, expert witness fees, marshall's fees, etc., to "open the litigation process to everyone."] and *Warren*, at 42-43 [finding that the trial court abused its discretion in excluding trial transcript costs from plaintiff's cost award, and holding that trial transcripts, though not ordered by the court or enumerated in section 1032, were nonetheless

---

[14] The signed Settlement Agreement provides that Plaintiff file shall file a single motion for attorney's fees, costs and expenses. The joint report is in accord (Cutler Decl. Ex. 5 at § 2. And See Ex 6)

[15] "Expenses" includes all expenses not part of overhead and ordinarily billed to paying clients regardless of whether recoverable under § 1033.5. *Bussey v. Affleck*, 225 Cal. App. 3d 1162 (1990); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal.App.4th 464, 491 (1996) (holding litigation expenses far broader than costs).

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

recoverable under section 1794(d)]). "California courts have 'repeatedly expressed . . . the need to construe the Song-Beverly Act so as to implement the legislative intent to *expand* consumer protection and remedies.'" *Forouzan*, *supra*, 2019 WL 3422607, at \*2 (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015)).

Accordingly, the Court should order FCA to reimburse Plaintiffs' $5,538.28 in litigation costs and expenses. (*See* Shahian Decl. ¶ 46 & Rosner Decl Ex A.)

## IV.   CONCLUSION

For the reasons stated, the Court should order FCA to pay the full amount of attorney fees, costs, and expenses incurred in litigating this matter, for a total amount of $120,594.18, which consists of $71,084.00 in attorney fees and $4,916.29 in recoverable costs and expenses for SLP, $11,550.00 in attorney fees and $621.99 in costs and expenses for the Rosner Firm, a 1.35 multiplier enhancement of $28,921.90, and $3,500 for the Fee Motion Reply.

Dated: August 19, 2019  By: _____

By: Jacob Cutler, Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES